## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CAJUN GLOBAL LLC d/b/a CHURCH'S CHICKEN and CAJUN FUNDING CORP.,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **CIVIL ACTION FILE** |
| **v.** | ) ) | **NO.: _____** |
| **YUM ENTERPRISES, LLC AND SHAFIQ SAMJI,** | ) ) ) | |
| **Defendants.** | ) ) ) | |
| _____ | ) | |

## VERIFIED COMPLAINT FOR
## DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Cajun Global LLC d/b/a Church's Chicken ("Plaintiff Global") and Cajun Funding Corp. ("Plaintiff Funding") (collectively, "Plaintiffs") bring this Verified Complaint for Damages and Injunctive Relief against Defendants Yum Enterprises, LLC ("Defendant Yum"), and Shafiq Samji ("Defendant Samji"), (collectively, "Defendants") and state as follows:

1.

Plaintiff Global franchises quick service Church's Chicken® restaurants ("Church's Chicken Restaurants") throughout the United States. In 2009 and 2010,

respectively, Cajun Operating Company, predecessor to Global ("Cajun Operating"), entered into two franchise agreements with PetroAmerica, LLC, predecessor to Defendant Yum, to operate two Church's Chicken Restaurants in Alabama. In connection with Defendant Yum's franchise agreements, Defendant Samji executed a guaranty agreement personally guaranteeing Defendant Yum's obligations to Plaintiff Global under the franchise agreements.

2.

This is an action to collect amounts due pursuant to the franchise agreements and guaranty for: (a) damages resulting from Defendants' unauthorized early closure of the Church's Chicken franchised restaurant in Childersburg, Alabama and the resulting early termination of the related franchise agreement; (b) damages resulting from amounts owed at the former Church's Chicken franchised restaurant in Alabaster, Alabama; (c) damages resulting directly from unauthorized post-expiration operations and infringement at the former Church's Chicken Restaurant in Alabaster, Alabama; and (d) damages resulting from infringement at the former Church's Chicken Restaurant in Childersburg, Alabama.

3.

This action also seeks to enjoin Defendants from willfully and unlawfully using Plaintiff Funding's registered trademarks and service marks (the "Church's

Chicken Marks") as well as Plaintiff Funding's goodwill and reputation after expiration of Yum's franchise agreements at a former Church's Chicken franchised restaurant. As a result of Defendant Yum's unauthorized post-termination use of Church's Chicken Marks, Plaintiffs also seek damages from Defendants for such infringement.

4.

All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## THE PARTIES

5.

Plaintiff Global is a Delaware limited liability company with its principal place of business, corporate headquarters, and members located in Atlanta, Georgia.

6.

Plaintiff Funding is a Delaware corporation with its principal place of business and corporate headquarters located in Atlanta, Georgia. Plaintiff Funding owns the Church's Chicken Marks. Plaintiff Funding granted Global the exclusive right to use and sublicense the Church's Chicken Marks in connection with the franchising of Church's Chicken Restaurants by Plaintiff Global.

7.

Defendant Yum is an Alabama corporation with its principal place of business in Alabama. Defendant Yum can be served with process through its member and registered agent, Karim Nasiruddin, at 10777 Hwy 119, Alabaster, Alabama 35007.

8.

Defendant Samji is a citizen and resident of the State of Alabama.  Samji can be served with process at 2321 Woodfern Circle, Hoover, Alabama 35244 or 15893 Highway 216, Brookwood, Alabama 35444.

## JURISDICTION AND VENUE

9.

This Court has subject matter jurisdiction over this action based upon:

(a)     Section 39 of the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338 (a), for the claims arising out of Defendants' violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); and

(b)     28 U.S.C. § 1338(b) and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants'

common law unfair competition and Defendants' breaches of written contracts and other related causes of action.

10.

The exercise of personal jurisdiction over Defendants by this Court is proper under Georgia's Long Arm Statute (O.C.G.A. § 9-10-91) based on the following facts (in addition to the other facts alleged in this Complaint):

(a) Plaintiff Global operates and franchises the Church's Chicken® Restaurants throughout the United States. Plaintiff Global's franchise operations are conducted and supervised from its headquarters located in Atlanta, Georgia;

(b) Defendants carried on a continuous course of direct communications with Plaintiffs via mail, email, and telephone through Plaintiffs' headquarters in Atlanta, Georgia;

(c) The course of dealing between Plaintiff Global and its franchisees (including Defendants) shows that decision-making authority is vested in Plaintiff Global's headquarters in Atlanta, Georgia;

(d) Defendants negotiated with Plaintiff Global in Atlanta, Georgia for (among other things) the acquisition of long-term franchise agreements

with the knowledge that they would benefit from their affiliation with Global;

(e)    Defendants voluntarily entered into the franchise agreements and guaranty with Plaintiff Global, which envisioned continuing and wide-reaching contacts with Plaintiff Global in Georgia, including regulation of their franchised business from Plaintiff Global's headquarters in Atlanta, Georgia;

(f)    Defendants have purposefully availed themselves of the benefits and protection of Georgia law by entering into the franchise agreements and guaranty with Plaintiff Global, all of which expressly provide that Georgia law will govern any and all disputes; and

(g)    Defendants breached contracts (which were to be performed in Georgia) by failing to make payments and otherwise performing their obligations to Global in Georgia pursuant to the franchise agreements and guaranty.

11.

The exercise of personal jurisdiction over Defendants is also proper based upon the agreement of the parties in the franchise agreements and guaranty.

12.

Venue is proper in this Court pursuant to:

(a)     28 U.S.C. § 1391(b)(2); and

(b)     the forum selection clauses agreed to by the parties in the franchise

agreements and guaranty.

## THE UNDERLYING AGREEMENTS

13.

On July 8, 2009, Cajun Operating entered into a Franchise Agreement and an Amendment thereto for Convenience Stores and Travel Plazas with PetroAmerica, LLC, predecessor to Defendant Yum ("Petro America"), granting Defendant Yum the right open and continuously operate a Church's Chicken restaurant located at 10777 Highway 119 South, Alabaster, Alabama (the "Alabaster Franchise Agreement") in accordance with the Church's Chicken system of developing, establishing and operating quick service restaurants featuring fried chicken and other menu items and commercial products(the "Church's Chicken System").   The Church's Chicken restaurant located at 10777 Highway 119 South, Alabaster, Alabama will hereinafter be referred to as the "Alabaster Restaurant." A true and correct copy of the Alabaster Franchise Agreement is attached hereto as Exhibit A and incorporated herein by reference.

14.

On August 16, 2010, Cajun Operating entered into a Franchise Agreement with PetroAmerica granting Defendant Yum the right to specifically open and continuously operate a Church's Chicken Restaurant located at 32121 US 280, Childersburg, Alabama (the "Childersburg Franchise Agreement") in accordance with the Church's Chicken System.  The Church's Chicken restaurant located at 32121 US 280, Childersburg, Alabama will hereinafter be referred to as the "Childersburg Restaurant." A true and correct copy of the Childersburg Franchise Agreement is attached hereto as Exhibit B and incorporated herein by reference.

15.

The Alabaster Franchise Agreement and Childersburg Franchise Agreement will hereinafter be collectively referred to as the "Franchise Agreements."

16.

In connection with the Alabaster Franchise Agreement, Defendant Samji executed a guaranty whereby Defendant Samji personally and unconditionally guaranteed to Global the performance of each and every obligation of Defendant Yum to Plaintiff Global under Alabaster Franchise Agreement *and* any other liability and obligation to Plaintiff Global (the "Guaranty").  A true and correct copy of the Guaranty is attached hereto as Exhibit C and incorporated herein by reference.

-8-

17.

Upon demand from Plaintiff Global, the Guaranty obligates Defendant Samji to render any payment or performance owed by Defendant Yum to Plaintiff Global.

## YUM'S OBLIGATIONS UNDER THE FRANCHISE AGREEMENTS

18.

The initial term of the Alabaster Franchise Agreement commenced on July 8, 2009 and expired on July 4, 2014 (the "Alabaster Initial Term"). (*See* First Amendment to Alabaster Franchise Agreement, Ex. A., at Section 2.) During Alabaster Initial Term, Defendant Yum was obligated to continuously operate the Alabaster Restaurant in accordance with the Church's Chicken System.

19.

Defendants are obligated by the terms of the Alabaster Franchise Agreement to make monthly payments to Global for royalties, advertising and other fees in connection with the operation of the Restaurant.  Specifically, the Alabaster Franchise Agreement requires Defendants to pay Global a royalty of 5% of gross sales of the Restaurant for the preceding week in return for the use of the Church's Chicken System and Church's Marks.  All such payments are due and payable to Global in Atlanta, Georgia.

20.

The initial term of the Childersburg Franchise Agreement began on August 16, 2010 and expires on August 15, 2030 (the "Childersburg Initial Term").  (*See* Childersburg Franchise Agreement, Ex. B at Form A.)

21.

Under the Childersburg Franchise Agreement, Defendant Yum is obligated to continuously operate the Childersburg Restaurant.  If Defendant Yum unilaterally fails to continuously operate the Childersburg Restaurant for more than five consecutive days, the Childersburg Franchise Agreement permits Plaintiff Global to terminate the Childersburg Franchise Agreement without opportunity to cure and requires Defendant Yum to immediately pay Plaintiff Global all sums due and owing under the Childersburg Franchise Agreement. (*See* Childersburg Franchise Agreement, Section 18.A(3).)

22.

As more particularly set forth below, termination of the Childersburg Franchise Agreement obligates Defendant Yum to pay Plaintiff Global liquidated damages pursuant to the formula set forth in Section 19.C of the Childersburg Franchise Agreement.

23.

Also, as more particularly set forth below, Defendants agreed to comply with certain post-termination and post-expiration obligations as explicitly provided by the Franchise Agreements, including cessation of all use of the Church's Chicken Marks immediately upon the expiration or termination of the Franchise Agreements.

## THE CHURCH'S CHICKEN MARKS

24.

To identify the source, origin and sponsorship of Plaintiff Global's products and services, through its license agreement from Plaintiff Funding (as further detailed below), Plaintiff Global has employed and caused the Church's Chicken Marks to be used throughout the United States. Plaintiff Global and its franchisees have spent hundreds of millions of dollars advertising and promoting the Church's Chicken Restaurants, services and products. This extensive advertising and marketing of the Church's Chicken products and restaurant services under the Church's Chicken Marks has had a dramatic impact upon the public, creating widespread recognition and goodwill.

25.

As a result of such expenditures and efforts by Plaintiff Global and its franchisees, valuable goodwill has been developed for the Church's Chicken Marks

and for the Church's Chicken Restaurants, products and services which bear the Church's Chicken Marks, and thus, identify Plaintiff Global as their sponsor or source.

26.

Plaintiff Funding owns the registrations for the Church's Chicken Marks. Plaintiff Funding has granted Global the exclusive right to use and sublicense the Church's Chicken Marks in connection with the franchising of Church's Chicken Restaurants by Plaintiff Global. Pursuant to Church's Chicken franchise agreements between Plaintiff Global and their franchisees, Plaintiff Global grants its franchisees a limited license and authority to use and display the Church's Chicken Marks, but only in such manner, and at such locations and times, as are expressly authorized by Plaintiff Global.  In no event is a franchisee authorized to use the Church's Chicken Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of all Church's Chicken franchise agreements, including the Franchise Agreements at issue in this case with Defendant Yum.

27.

Set forth below is an abbreviated listing of the Church's Chicken Marks registered in the United States Patent and Trademark Office, all of which continue to be used by Defendants:

| TRADEMARK | REGISTRATION NUMBER | REGISTRATION DATE |
|---|---|---|
| **CHURCH'S CHICKEN (Words Only)** | 3519711 | 10/21/08 |
|  | 2721849 | 6/3/03 |

28.

Plaintiffs comply with all legal requirements to ensure that Plaintiff Funding retains its exclusive rights with respect to the Church's Chicken Marks. Under Plaintiff Funding's license agreement with Plaintiff Global, Plaintiff Funding has the right and obligation to protect and defend the Church's Chicken Marks and Plaintiff Global has the duty to notify Plaintiff Funding of any infringement.

29.

In addition to complying with all legal requirements, Plaintiffs take all reasonable precautions to ensure that Plaintiff Funding retains its exclusive rights with respect to the Church's Chicken Marks and to prevent their unauthorized use. For example, Plaintiff Global educates its franchisees and employees as to the

importance of the Church's Chicken Marks and instructs them with regard to the proper use of the Church's Chicken Marks.

30.

Plaintiff Global also instructs its employees to "police" the Church's Chicken Marks; that is, to look for unauthorized use of the Church's Chicken Marks in the business community and report any such use to Plaintiff Global.  Additionally, under the terms of their Church's Chicken franchise agreements, Plaintiff Global's franchisees are required to notify Plaintiff Global of any infringement or imitation of the Church's Chicken Marks that comes to their attention.

31.

The registrations of the Church's Chicken Marks are currently in full force and effect, and Plaintiff Funding has given notice to the public of the registration of the Church's Chicken Marks as provided in 15 U.S.C. § 1111.

32.

Plaintiff Global's products bearing the Church's Chicken Marks are offered and sold in interstate commerce.

## DEFENDANTS' DEFAULTS UNDER THE
## FRANCHISE AGREEMENTS AND GUARANTY

33.

As previously stated, the Initial Term of the Alabaster Franchise Agreement expired on July 4, 2014.

34.

As a result of the foregoing, Plaintiff Global sent a letter to Defendants on January 11, 2017, notifying them of the expiration of the Alabaster Franchise Agreement (the "Alabaster Expiration Letter"). A true and correct copy of the Alabaster Expiration Letter is attached hereto as Exhibit D and incorporated herein by reference.

35.

As a good faith accommodation and without waiving any rights, the Alabaster Expiration Letter provided Defendants with thirty (30) days to shut down the unauthorized operations at the Alabaster Restaurant and to bring themselves into compliance with the post-expiration obligations as provided by Section 19 of the Alabaster Franchise Agreement.

36.

Despite expiration of the Initial Term of the Alabaster Franchise Agreement, and receipt of the Alabaster Expiration Letter, Defendant Yum continues to operate

the Alabaster Restaurant as a Church's Chicken Restaurant and use the Church's Chicken Marks without any authority to do so.  Furthermore, Defendant Samji has not done, or caused to be done, anything to ensure Defendant Yum ceases to operate the Alabaster Restaurant as a Church's Chicken Restaurant or ceases to use the Church's Chicken Marks.

37.

Additionally, on or about September 3, 2015, Defendant Yum unilaterally ceased operations at the Childersburg Restaurant for more than five consecutive days, which constitutes a breach of the Childersburg Franchise Agreement and provides Plaintiff Global with the right to immediately terminate the Childersburg Franchise Agreement upon notice to Defendant Yum (without any opportunity to cure).   Defendant Yum permanently closed the Childersburg Restaurant approximately 15 years prior to the end of the Childersburg Initial Term on August 15, 2030.

38.

As a result of the foregoing, and in accordance with Section 18.A(3) of the Childersburg Franchise Agreement, Plaintiff Global sent a letter to Defendants on October 17, 2016, terminating the Childersburg Franchise Agreement and notifying them of the amounts owed under the Childersburg Franchise Agreement (the

"Childersburg Termination Letter"). A true and correct copy of the Childersburg Termination Letter is attached hereto as Exhibit E and incorporated herein by reference.

39.

Specifically, the Childersburg Termination Letter notified Defendants of the immediate termination of the Childersburg Franchise Agreement (due to Defendants' abandonment of the Childersburg Restaurant) and Defendants' resulting obligation to pay liquidated damages to Global in the amount of $58,658.60, which was calculated pursuant to the formula prescribed in Section 19.C of the terminated Childersburg Franchise Agreement.    The Childersburg Termination Letter demanded that Defendants immediately pay Plaintiff Global the forgoing liquidated damages.

40.

Additionally, the Childersburg Termination Letter notified Defendants that they are responsible for the cost and expense of any legal action resulting from their failure to perform under the Childersburg Franchise Agreement, including the failure to pay amounts owed under the same.  Further, the Guaranty obligates Samji to pay the liquidated damages owed by Yum.

## OBLIGATIONS UPON EXPIRATION OR TERMINATION
## OF THE FRANCHISE AGREEMENTS

41.

Upon expiration of the Alabaster Franchise Agreement and termination of the Childersburg Franchise Agreement, Defendant Yum is required to, and Defendant Samji guarantees that Defendant Yum shall, do the following:

(1)     immediately pay Plaintiff Global and its affiliates all sums due and owing Plaintiff Global or its affiliates pursuant to the Franchise Agreements (Defendants owe not less than $58,658.60 under the Childersburg Franchise Agreement and not less than $1,982.83 reflecting unpaid royalties, advertising contributions and legal fees related to the Alabaster Restaurant);

(2)     promptly return to Plaintiff Global the Manuals, any copies of the Manuals, the training kit (if applicable), and all other materials and information furnished by Global, including the return in good condition and repair all computer software, disks, and other electronic storage media;

(3)     continue to abide by, and not take any action that violates the covenants contained in Section 17 of the Franchise Agreements;

(4)     discontinue all use of the Church's Chicken Marks in connection with the Restaurants and any and all items bearing the Church's Chicken Marks; remove the Church's Chicken Marks from the Restaurants and from clothing, signs, materials, motor vehicles and other items owned or used by Defendant Yum in the operation of the Restaurants; cancel all advertising for the Restaurants that contains the Church's Chicken Marks; and take such action as may be necessary to cancel any filings or registrations for the Restaurants that contain any of the Church's Chicken Marks;

(5)     at Defendant Yum's expense, make such alterations and modifications to the Restaurants as may be necessary to clearly distinguish to the public the Restaurants from their former appearance and also make specific additional changes as either of the Plaintiffs may request for that purpose; and

(6)     furnish to Plaintiff Global (within 30 days after the effective date of termination or notice of expiration) evidence satisfactory to Plaintiff Global of Defendant Yum's compliance with the above-listed obligations.

The obligations set forth in subparts (1) – (6) of this Paragraph shall be collectively referred to in this Complaint as the "Post-Expiration Obligations" or "Post-Termination Obligations."

42.

By agreeing to these terms, upon the expiration or termination of Franchise Agreements, Defendant Yum specifically agreed to immediately cease operating the Restaurants as Church's Chicken Restaurants and to desist from all use of the Church's Chicken Marks and trade dress.

43.

Upon termination or expiration of the Franchise Agreements, Defendant Yum has no right to use or display the Church's Chicken Marks and no right to operate the Restaurants using the Church's Chicken System.

44.

The Franchise Agreements further prohibit Defendant Yum (upon expiration or termination of the Franchise Agreements) from using any of Plaintiffs' trade secrets and promotional materials, or any mark confusingly similar to the Church's Chicken Marks.

45.

The Alabaster Expiration Letter demanded that Defendants bring themselves into compliance with the Post-Expiration Obligations of the Alabaster Franchise Agreement on or before February 10, 2017.  (*See* Alabaster Expiration Letter, Ex. D.)

46.

The Childersburg Termination Letter demanded that Defendants immediately bring themselves into compliance with the Post-Termination Obligations of the Childersburg Franchise Agreement.  (*See* Childersburg Termination Letter, Ex. E.)

## YUM'S INFRINGEMENT AND REFUSAL TO COMPLY WITH POST-TERMINATION AND POST-EXPIRATION COVENANTS OF THE FRANCHISE AGREEMENTS

47.

Notwithstanding the expiration of the Alabaster Franchise Agreement and Defendants' receipt of the Alabaster Expiration Letter, Defendants continue to operate the Alabaster Restaurant.

48.

Additionally, notwithstanding the termination of the Childersburg Franchise Agreement and Defendants' receipt of the Childersburg Termination Letter, Defendant Yum has failed to remove from the Childersburg Restaurant many of

the Church's Chicken interior and exterior signage and all other items which bear

or display the Church's Chicken Marks, name, symbols or slogans.

49.

Defendants' unlawful actions and inactions with respect to the Alabaster

Childersburg Restaurants reflect a conscious indifference to their post-expiration

and post-termination obligations under the Franchise Agreements.

50.

Defendants' failure to comply with the post-termination and post-expiration

covenants is likely to confuse the public. As a result, the potential damage to

Plaintiffs' goodwill and reputation is incalculable, and the potential harm to

Plaintiffs is irreparable.

## DAMAGES

51.

Under the terms of the Childersburg Franchise Agreement, the terms of the

Guaranty and in accordance with Georgia law, Defendants are obligated to pay lost

future royalties as a result of Defendants' breach of the Childersburg Franchise

Agreement and Guaranty.  Specifically, Section 19.C of the Childersburg Franchise

Agreement prescribes the appropriate formula to calculate Plaintiff Global's

damages for early termination, considering the remainder of the Childersburg Initial

Term, which was approximately 15 years.  Accordingly, as a result of Defendant Yum's unilateral decision to cease continuously operating the Childersburg Restaurant, Defendants are obligated to pay Plaintiff Global monetary damages for the termination Childersburg Franchise Agreement as calculated pursuant to Section 19.C of the Childersburg Franchise Agreement.

52.

The Childersburg Termination Letter demanded that Defendants immediately pay liquidated damages in the amount of $58,658.60 for lost future royalties as a result of the early closure of the Childersburg Restaurant.

53.

Despite Defendants' obligations under the Childersburg Franchise Agreement and Guaranty, and despite Defendants' receipt of the Childersburg Termination Letter, Defendants have failed and refused to pay the damages due and owing to Plaintiff Global.

54.

Defendants are indebted to Plaintiff Global for all monetary damages, including without limitation liquidated damages and legal fees incurred by Plaintiff Global as a result of Defendants' breach of the Childersburg Franchise Agreement.

55.

Defendants further agreed in writing that if Plaintiff Global utilizes legal counsel in connection with any failure by Defendants to comply with the Franchise Agreements or Guaranty, Defendants shall reimburse Plaintiff Global for all expenses incurred, including (but not limited to) attorneys' fees.  Plaintiff Global and Defendants agreed, in the Franchise Agreements and the Guaranty, that the Court and not a jury would determine these amounts.

56.

Plaintiffs have engaged undersigned counsel and have agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between the Plaintiff Global and Defendants.

57.

Defendants are also indebted to Plaintiff Global for all unpaid financial obligations that accrued under the Alabaster Franchise Agreement before Plaintiff Global demanded that Defendants shut down, including without limitation unpaid royalty fees, advertising contributions and legal fees associated with Defendants' operations in an amount not less than $1,982.83.

58.

Plaintiff Global in no way breached the Franchise Agreements, and Global has fulfilled each and every obligation it had pursuant to the Franchise Agreements.

## COUNT I
## BREACH OF CHILDERSBURG FRANCHISE AGREEMENT
## (UNAUTHORIZED CLOSURE)

59.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

60.

On or about September 3, 2015, Yum unilaterally ceased operations at the Childersburg Restaurant for more than five (5) consecutive days.  Section 17.A of the Childersburg Franchise Agreement states that such cessation of operations constitutes a breach that section, and upon such breach, effective upon notice to Yum, Global has the right to immediately terminate, without opportunity to cure, the Childersburg Franchise Agreement.  Yum has made no effort to re-open the Childersburg Restaurant since September 3, 2015, and the restaurant remains closed as of the date of this Complaint.

61.

On October 17, 2016, Plaintiff Global gave Defendants notice that the Childersburg Franchise Agreement was terminated (without opportunity for Yum to cure) because Yum ceased operations at the Childersburg Restaurant in violation of the terms of the Childersburg Franchise Agreement.

62.

Defendant Yum's unauthorized early closure of the Childersburg Restaurant represents a breach of the Childersburg Franchise Agreement.

63.

The forgoing breach has directly and proximately caused loss and damage to Plaintiff Global.

64.

Through the Childersburg Termination Letter (and in accordance with the terms of the Childersburg Franchise Agreement), Plaintiff Global demanded that Defendants immediately pay liquidated damages in the amount of $58,658.60, as a result of the unauthorized early closure of the Childersburg Restaurant.

65.

Despite Defendants' obligations under Childersburg Franchise Agreement, and despite Defendants' receipt of the Childersburg Termination Letter, Defendants have failed and refused to pay the damages due and owing to Plaintiff Global.

66.

Defendants' failure to pay Global as obligated is a breach of the Childersburg Franchise Agreement.

67.

The forgoing breach has directly and proximately caused loss and damage to Plaintiff Global.

68.

Defendants owe Plaintiff Global $58,658.60, exclusive of legal fees, which is now past due and owing pursuant to the Childersburg Franchise Agreement.

## COUNT II
## BREACH OF CHILDERSBURG AND ALABASTER
## FRANCHISE AGREEMENTS
## (CONFIDENTIALITY AND TRADE SECRETS)

69.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

70.

The confidentiality provisions of the Franchise Agreements serve to protect Plaintiffs' legitimate business interests, including, but not limited to, its trade secrets, confidential business information and its good will and substantial relationships with its franchisees and customers and are reasonably necessary to protect Plaintiffs' legitimate business interests.

71.

Defendant Yum has not returned the confidential Manuals, recipe books and kitchen recipe signs to Global as required by the Franchise Agreements.

72.

Defendant Yum's actions constitute breaches of the confidentiality provisions of the Franchise Agreements.

73.

These breaches have directly and proximately caused loss and damage to Plaintiffs in an amount to be determined at trial.

## COUNT III
## BREACH OF ALABASTER FRANCHISE AGREEMENT
## (POST-EXPIRATION OBLIGATIONS)

74.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

75.

Defendants have breached the Post-Expiration Obligations of the Alabaster Franchise Agreement by refusing to shut down operations, de-identify the Alabaster Restaurant from Church's Chicken, and comply with other Post-Expiration Obligations.

76.

Defendants' refusal to comply with the post-expiration covenants of the Alabaster Franchise Agreement is a breach of the Alabaster Franchise Agreement which has directly and proximately caused loss and damage to Plaintiffs.

## COUNT IV
## BREACH OF CHILDERSBURG FRANCHISE AGREEMENT
## (POST-TERMINATION OBLIGATIONS)

77.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

78.

Defendants have breached the Post-Termination Obligations of the Childersburg Franchise Agreement by refusing to de-identify the Childersburg Restaurant from Church's Chicken and comply with the other Post-Termination Obligations.

79.

Defendants' refusal to comply with the post-termination covenants of the Childersburg Franchise Agreement is a breach of the Childersburg Franchise Agreement which has directly and proximately caused loss and damage to Plaintiffs.

## COUNT V
## BREACH OF GUARANTY

80.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

81.

Pursuant to the Guaranty, Defendant Samji unconditionally and personally guaranteed to Plaintiff Global the performance of each and every obligation of Defendant Yum.

82.

Accordingly, Defendant Samji is obligated to pay Plaintiff Global lost future royalties in the amount of $58,658.60, as a result of the early closure of the Childersburg Restaurant. The foregoing amount has been calculated pursuant to the liquidated damages provision of the Childersburg Franchise Agreement.

83.

Likewise, Defendant Samji also owes Plaintiffs for all damages Plaintiff Global has suffered and continues to suffer as a result of Yum's breach and continuing breaches of the confidentiality provisions and post expiration and post-termination covenants of the Franchise Agreements in an amount not less than $1,982.83.

84.

Therefore, Defendant Samji owes Plaintiff Global an amount not less than $60,641.43, exclusive of legal fees, which is now past due and owing.

**COUNT VI**
**ATTORNEYS' FEES**

85.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

86.

The Franchise Agreements provide that if Global utilizes legal counsel in connection with any failure by Defendants to comply with the Franchise Agreements or Guaranty, Defendants shall reimburse Plaintiff Global for all expenses incurred, including (but not limited to) attorneys' fees.  The parties agreed that the Court and not a jury would determine these amounts.

87.

The Franchise Agreements and Guaranty provides that the prevailing party is entitled to its attorneys' fees and costs. Pursuant to those provisions and O.C.G.A. § 13-1-11, Plaintiff Global hereby demands that Defendants reimburse it for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

88.

In addition, Defendants have acted in bad faith, caused unnecessary expense and delay, and been stubbornly litigious. As such, Plaintiff Global is entitled to their reasonable attorneys' fees incurred in this litigation pursuant to O.C.G.A. § 13-6-11.

## COUNT VII
## LANHAM ACT INFRINGEMENT

89.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

90.

Defendants' acts constitute infringements of Funding's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT VIII
## LANHAM ACT FALSE DESIGNATION

91.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

92.

Defendants' acts constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT IX
## COMMON LAW TRADEMARK INFRINGEMENT

93.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

94.

Defendants' acts constitute unlawful trademark and service mark infringements under the common law.

## COUNT X
## COMMON LAW TRADEMARK UNFAIR COMPETITION

### 95.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

### 96.

Defendants' acts constitute unfair competition under the common law.

## COUNT XI
## VIOLATION OF GEORGIA'S
## UNIFORM DECEPTIVE TRADE PRACTICES ACT

### 97.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

### 98.

Defendants have misappropriated Plaintiffs' confidential and proprietary business information, including recipes, methods and systems contained in the Manual by failing to return items after the franchise relationship between the parties ended.

### 99.

Such actions cause a likelihood of confusion and misunderstanding as to Defendants' affiliation, connection and association with Plaintiffs, which no longer

exists post-expiration of the Alabaster Franchise Agreement and post-termination of the Childersburg Franchise Agreement.

100.

The foregoing conduct is unlawful, unethical and deceitful.

101.

Defendants' actions constitute a violation of Georgia's Uniform Deceptive Trade Practices Act.

102.

These actions have directly and proximately caused loss and damage to Plaintiffs.

**COUNT XII**
**INJUNCTION AND TEMPORARY RETRAINING ORDER**

103.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

104.

Defendants continue to unlawfully operate a Church's Chicken at the Alabaster Restaurant despite the fact that the Alabaster Franchise Agreement has expired by its own terms.

-35-

105.

Defendants continue to use the trademarks and other confidential and proprietary information of Plaintiffs at the Alabaster and Childersburg Restaurants.

106.

Defendants actions are resulting in irreparable harm to Plaintiffs, making money damages inadequate.

107.

Plaintiffs will prevail on their claims due to Defendants' trademark infringement and violations of Franchise Agreements.

108.

As a result, Defendants should be immediately enjoined and restrained from continuing to operate at the Alabaster Restaurant and from using the trademarks, confidential and other propriety information of Plaintiffs at the Alabaster and Childersburg Restaurants.

109.

Defendants should further be ordered to de-identify with Plaintiffs, return the Manual, recipe books and all other confidential materials to Plaintiffs, and promptly make such alterations and modifications to the Alabaster and Childersburg

Restaurants as may be necessary to clearly distinguish to the public the Restaurants from a Church's Chicken restaurant.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.     For temporary restraining orders and/or preliminary and permanent injunctions enjoining Defendants and all persons acting on their behalf, in concert with, or under their control, from:

(a)     manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Church's Chicken Marks, or any colorable imitation thereof at the Alabaster and Childersburg Restaurants;

(b)     displaying or using any of the Church's Chicken Marks to advertise or promote the sale of, or to identify, the Alabaster and Childersburg Restaurants, or any product or service provided therein; and

(c)     making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Alabaster and Childersburg Restaurants and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Plaintiffs.

2.     For temporary restraining orders and/or preliminary and permanent injunctions directing Defendants and all persons acting on Defendants' behalf, in concert with Defendants, or under Defendants' control, to:

(a)     recall and deliver up to Plaintiffs all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, any of the Church's Chicken Marks, or any colorable imitation of the Church's Chicken Marks from the Alabaster and Childersburg Restaurants;

(b)     recall and deliver up to Plaintiffs all copies and editions of the Manual that are in their actual or constructive, direct or indirect, possession, custody or control at the Alabaster and Childersburg Restaurants, including all supplements and addenda thereto, and all other materials containing restaurant operating instructions, restaurant business practices, or plans of Plaintiffs;

(c)     allow Plaintiffs, at a reasonable time, to enter the premises of the Alabaster and Childersburg Restaurants and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from a Church's Chicken restaurant;

(d)     account and pay over to Plaintiffs all gains, profits, and advantages derived by Defendants at the Restaurants from any trademark and service

-38-

mark infringement, breach of contract, and unfair competition to the full extent provided for by Sections 35 and 43(a) of the Lanham Act and by the controlling principles of common law, and

      (e)   unlawfully using or disclosing Plaintiffs' confidential information, including confidential business information and trade secrets, Manual, recipes, product specifications, information, techniques and know-how.

3.    For money damages, plus three times additional actual damages Plaintiffs have sustained by reason of Defendants' trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

4.    For pre-judgment interest and Plaintiffs' reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreements and, because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

5.    For compensatory damages and attorneys' fees against Defendants due to their breaches of contract in an amount not less than $60,641.43.

6.    For money damages, including treble damages for violations of Georgia's Uniform Deceptive Trade Practices Act;

8.     For an order directing Defendants to file with the Court, and to serve on Plaintiffs' counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

9.     For all costs, disbursements, and expenses of this action; and

10.    For all such other relief as this Court may deem just and proper.

Respectfully submitted this 24th day of February, 2017.

SLOTKIN & CAIOLA, LLC


/s/ Anne P. Caiola
ANNE P. CAIOLA
Georgia Bar No. 142639
annie@slotkincaiola.com
ELIZABETH B. ROSE
Georgia Bar No. 558747
elizabeth@slotkincaiola.com
*Attorneys for Plaintiffs*

118 E. Maple Street
Decatur, GA 30030
404-228-4099 phone
404-228-4610 fax

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **CAJUN GLOBAL LLC d/b/a CHURCH'S CHICKEN and CAJUN FUNDING CORP.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**YUM ENTERPRISES, LLC AND SHAFIQ SAMJI,**<br><br>**Defendants.** | **CIVIL ACTION FILE NO.:** _____ |

## <u>VERIFICATION</u>

COMES NOW the undersigned officer or agent for Cajun Global LLC d/b/a Church's Chicken, who verifies under penalty of perjury that upon his knowledge and belief, the within and foregoing allegations in the forgoing Verified Complaint for Damages and Injunctive Relief are true and correct.

Executed on February ___24th_____, 2017.

Cajun Global LLC d/b/a Church's Chicken

By:_____

Craig Prusher, Its: Executive Vice President, Chief Legal Officer and Secretary

A notary is not required pursuant to 28 U.S.C. § 1746.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **CAJUN GLOBAL LLC d/b/a CHURCH'S CHICKEN and CAJUN FUNDING CORP.,**<br><br>     **Plaintiffs,**<br><br>**v.**<br><br>**YUM ENTERPRISES, LLC AND SHAFIQ SAMJI,**<br><br>     **Defendants.** | )<br>)<br>)<br>)<br>)<br>)     **CIVIL ACTION FILE**<br>)     **NO.: _____**<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>VERIFICATION</u>

COMES NOW the undersigned officer or agent for Cajun Funding Corp., who verifies under penalty of perjury that upon his knowledge and belief, the within and foregoing allegations in the forgoing Verified Complaint for Damages and Injunctive Relief are true and correct.

Executed on February ___24th_____, 2017.

Cajun Funding Corp.

By: _____

Craig Prusher, Its: President

A notary is not required pursuant to 28 U.S.C. § 1746.